MICHELE BECKWITH
Acting United States Attorney
JOSEPH D. BARTON
BRITTANY M. GUNTER
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

**FILED**
Jun 05, 2025
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JESSA ZAYAS aka Jessa Contreras, <br><br> Defendant. | CASE NO. 1:25-cr-00116-JLT-SKO <br><br> 18 U.S.C. § 1347(a)(1) and (2) – HEALTH CARE FRAUD (FOUR COUNTS); 18 U.S.C. § 1028A(a)(1) – AGGRAVATED IDENTITY THEFT (TWO COUNTS); 18 U.S.C. § 982(a)(7) – CRIMINAL FORFEITURE |

I N D I C T M E N T

COUNTS ONE THROUGH FOUR: [18 U.S.C. § 1347(a)(1) and (2) – Health Care Fraud]

The Grand Jury charges:

JESSA ZAYAS aka Jessa Contreras,

defendant herein, as follows:

### I. INTRODUCTION

1. At all relevant times, defendant ZAYAS was licensed by the State of California to be a vocational nurse. A vocational nurse is an entry-level health care provider who is responsible for rendering basic care under the direction of another, more senior health care provider such as a doctor.

///

///

2. At all relevant times, defendant ZAYAS was an owner and Chief Executive Officer of Healings Hands Hospice and Humane Love Hospice, which purported to provide hospice care to Medicare patients.

3. At all relevant times, defendant ZAYAS worked and resided in Fresno County and Kern County, State and Eastern District of California, Los Angeles County, State and Central District of California, and elsewhere.

4. At all relevant times, DOCTOR ONE was licensed by the State of California to be a medical doctor.

5. At all relevant times, DOCTOR ONE operated his own internal medicine practice with his business partners and resided in Fresno County, State and Eastern District of California.

## II. RELEVANT BACKGROUND ON MEDICARE AND HOSPICE

6. Medicare is a federally funded health insurance program that primarily provides health insurance for individuals who are 65 years old and older. The program is administered by the Centers for Medicare & Medicaid Services ("CMS") and covers various types of health care services, including hospice services. CMS contracts with Home Health and Hospice Medicare Administrative Contractors ("MAC") to process and pay hospice claims that are submitted to Medicare. National Government Services ("NGS") is the MAC responsible for processing and paying Medicare hospice claims in California.

7. Medicare is a "health care benefit program" as defined in 18 U.S.C. § 24(b).

8. Hospice care is a comprehensive, holistic program of care and support for terminally ill patients. It changes the focus to comfort care, *i.e.*, palliative care, for pain relief and symptom management instead of care to cure the patients' illnesses.

9. To qualify for hospice care under Medicare, a patient must generally be certified by a physician as being terminally ill, *i.e.*, having a life expectancy of six months or less if the illness runs its normal course.

10. A patient who is qualified to receive hospice care under Medicare is entitled to receive care for two 90-day periods followed by an unlimited number of 60-day periods. At the start of the initial 90-day period, the hospice provider must obtain written certification of the patient's terminal

illness from the patient's primary care provider and the hospice provider's medical director. For subsequent periods, the hospice provider only needs to obtain a written certification from its medical director. The certifications must include an explanation of why the patient's life expectancy is six months or less. These certifications are referred to as Certifications of Terminal Illness ("CTI").

11. When a hospice provider submits a claim for payment to Medicare and NGS, the provider must list the date and type of service that was provided to the patient. The hospice provider must also list the name and National Provider Identification ("NPI") number for the patient's primary care provider and/or the hospice provider's medical director who signed the CTI authorizing the patient to receive hospice care. An NPI number is a unique number that Medicare assigns to each health care professional who is involved in the program. Finally, the hospice provider must certify to Medicare and NGS that the information listed in the claim is accurate.

12. Medicare and NGS decide whether to approve a claim for payment submitted by a hospice provider based on the information listed in the claim. They will deny, and will not pay, a claim if the patient was not qualified to receive hospice care and the patient's primary care provider and/or the hospice provider's medical director did not sign the CTI authorizing the patient to receive such care.

13. After Medicare and NGS approve a claim for payment submitted by a hospice provider, they generally send the payment to the hospice provider's bank account through an electronic funds transfer.

### III.   THE SCHEME

14. Beginning on a date unknown to the Grand Jury, but no later than in or around June 2023, and continuing until in or around May 2025, in Fresno County and Kern County, State and Eastern District of California, and elsewhere, ZAYAS knowingly and willfully executed, and attempted to execute, a scheme to defraud and to obtain money and property owned by and under the custody and control of a health care benefit program, namely Medicare, by submitting fraudulent claims to Medicare and NGS for the provision of hospice care to patients through Healing Hands Hospice and Humane Love Hospice, which contained materially false representations, including that the patients were qualified to receive hospice care and that the patients' primary care providers and/or Healing Hands Hospice and Humane Love Hospice's medical director had signed CTIs authorizing the patients to

receive such care.

### IV. MANNER AND MEANS USED TO CARRY OUT THE SCHEME

15. Defendant ZAYAS carried out her scheme by using the following manner and means, among others:

16. Defendant ZAYAS and other people working under her direction and control at Healing Hands Hospice and Humane Love Hospice obtained the personal identifying information ("PII") for Medicare patients by going to retirement residences in Fresno County and Kern County, State and Eastern District of California, and elsewhere, and asking the patients for their PII and signing them up for hospice services even though they were not terminally ill. Defendant ZAYAS and the other people who were working for her were not authorized to conduct business at the retirement residences and entered the residences after hours when most of the residences' management staff was gone for the day to try to avoid detection. Defendant ZAYAS knew that the patients were not terminally ill and therefore were ineligible for legitimate Medicare payments for hospice care.

17. In or around June 2023, DOCTOR ONE was introduced to defendant ZAYAS through one of his business partners and learned that defendant ZAYAS was looking for a medical director for Healing Hands Hospice and Humane Love Hospice. A few days later, he met defendant ZAYAS in a cafeteria at a medical center in Fresno County, State and Eastern District of California. Defendant ZAYAS brought physician service agreements for Healing Hands Hospice and Humane Love Hospice with her to the meeting and they proceeded to execute the agreements. DOCTOR ONE, however, did not perform much work for the companies. He primarily just prescribed controlled substances for patients. He did not see any patients in-person or communicate with them directly. All his communications went through defendant ZAYAS and other individuals who he believed worked for her.

18. Defendant ZAYAS subsequently caused fraudulent claims to be submitted to Medicare and NGS for the provision of hospice care to over 100 patients' whose PII she had obtained by going to the retirement residences. The claims were submitted to Medicare and NGS through Healing Hands Hospice and Humane Love Hospice. Each claim contained several false representations, including that the patient was qualified to receive hospice care and that DOCTOR ONE had signed a CTI authorizing the patient to receive such care.

19. As part of the scheme, defendant ZAYAS caused to be produced fake CTIs authorizing the patients to receive hospice care with DOCTOR ONE's signature forged thereon. Defendant ZAYAS provided the false documents to Medicare and NGS in response to requests for documentation regarding patients for whom defendant ZAYAS had previously caused fraudulent claims to be submitted.

20. Altogether, Medicare and NGS paid out at least $2,500,000 to defendant ZAYAS, Healing Hands Hospice, and Humane Love Hospice because of the fraudulent claims. Medicare and NGS would not have paid the claims had they known that the patients were not qualified to receive hospice care and that DOCTOR ONE had not signed the CTIs authorizing the patients to receive such care.

21. The payments that defendant ZAYAS, Healing Hands Hospice, and Humane Love Hospice received from Medicare and NGS because of the fraudulent claims were deposited into bank accounts over which defendant ZAYAS had access and control. She used the proceeds for her own benefit and for the benefit of others who were not entitled to the funds. For example, she kept approximately $77,000 of the proceeds in cash and stored the cash in boxes underneath her bed at one of her residences in Los Angeles County.

22. At all relevant times, defendant ZAYAS acted with the intent to defraud, which is the intent to deceive and cheat.

## V. FRAUDULENT CLAIMS SUBMITTED TO MEDICARE AND NGS

23. On or about the dates below, in Fresno County and Kern County, State and Eastern District of California, and elsewhere, defendant ZAYAS knowingly and willfully executed, and attempted to execute, a scheme to defraud and to obtain money and property owned by and under the custody and control of a health care benefit program, namely Medicare, and caused fraudulent claims for hospice services to be submitted to Medicare and NGS as follows:

///
///
///
///
///

| Count | Patient | Service Date | Submit Date | Claim No. | County |
|---|---|---|---|---|---|
| ONE | R.S. | 8/4/23 – 8/25/23 | 9/5/23 | 22324801019707CAR | Fresno |
| TWO | C.C. | 9/1/23 – 9/25/23 | 10/3/23 | 22327600925207CAR | Fresno |
| THREE | A.I.C. | 9/13/23 – 9/27/23 | 10/3/23 | 22327601505807CAR | Kern |
| FOUR | M.M. | 1/1/24 – 1/29/24 | 2/5/24 | 22403601014607CAR | Fresno |

All in violation of 18 U.S.C. § 1347(a)(1) and (2).

<u>COUNTS FIVE AND SIX</u>: [18 U.S.C. § 1028A(a)(1) – Aggravated Identity Theft]

The Grand Jury further charges:

JESSA ZAYAS aka Jessa Contreras,

defendant herein, as follows:

24. The Grand Jury realleges and incorporates by reference as though fully set forth herein the allegations made in paragraphs 1 through 23 of this Indictment.

25. The term "means of identification" includes any name or number that can be used to identify a specific individual.

26. On or about the dates below, in Fresno County and Kern County, State and Eastern District of California, and elsewhere, defendant ZAYAS did knowingly transfer and use a means of identification of another person without lawful authority during and in relation to an unlawful activity that constitutes a violation of federal law, to wit, health care fraud in violation of 18 U.S.C. § 1347(a)(1) and (2), as follows:

| Count | Date | Actual Person | Means of Identification Used | Corresponding Count |
|---|---|---|---|---|
| FIVE | 9/5/23 | DOCTOR ONE | Name and NPI number for DOCTOR ONE, who was listed as attending doctor for fraudulent claim for hospice care purportedly provided to R.S. with claim no. 22324801019707CAR | ONE |
| SIX | 2/5/24 | DOCTOR ONE | Name and NPI number for DOCTOR ONE, who was listed as attending doctor for fraudulent claim for hospice care purportedly provided to M.M. with claim no. 22403601014607CAR | FOUR |

1    All in violation of 18 U.S.C. § 1028A(a)(1).

2    FORFEITURE ALLEGATION:    [18 U.S.C. § 982(a)(7) - Criminal Forfeiture]

3    27.    Upon conviction of one or more of the offenses alleged in Counts One through Four of this Indictment, defendant ZAYAS shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses, including but not limited to the following:

   a)    Approximately $77,000.00 in U.S. Currency seized from ZAYAS' residence in Los Angeles County, State and Central District of California, on or about May 28, 2025; and

   b)    A sum of money equal to the amount of property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to such offenses, for which defendant ZAYAS is convicted.

   28.    If any property subject to forfeiture because of the offenses alleged in Counts One through Four of this Indictment, for which defendant is convicted:

   a)    cannot be located upon the exercise of due diligence;

   b)    has been transferred or sold to, or deposited with, a third party;

   c)    has been placed beyond the jurisdiction of the court;

   d)    has been substantially diminished in value; or

   e)    has been commingled with other property that cannot be easily divided;

///
///
///
///
///
///
///
///
///

INDICTMENT                                    7

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant, up to the value of the property subject to forfeiture.

A TRUE BILL.

/s/ Signature on file w/AUSA
_____
FOREPERSON

MICHELE BECKWITH
Acting United States Attorney

**KIMBERLY A. SANCHEZ**
_____
KIMBERLY A. SANCHEZ
Assistant United States Attorney
Chief, Fresno Office